Filed 8/9/22  Marriage of Subias and Ringelspaugh CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of JOSE SUBIAS and RACHEL RINGELSPAUGH. | D079368 |
| JOSE SUBIAS,<br><br>Respondent,<br><br>v.<br><br>RACHEL RINGELSPAUGH,<br><br>Appellant. | (Super. Ct. No. 18FL010306E) |

APPEAL from a judgment of the Superior Court of San Diego County, Frank L. Birchak, Judge.  Affirmed.

Rachel Ringelspaugh, in pro. per., for Appellant.

No appearance for Respondent.

In this family law case, appellant Rachel Ringelspaugh appeals a judgment on reserved issues contending that the trial judge failed to give proper weight to certain evidence, improperly considered other evidence, and violated her due process rights by conducting the trial using inadequate

and imperfect remote technology. But as an appellate court, it is not our role to retry the case. To the extent the record is sufficient for us to consider these issues, and cognizant of the applicable standard of appellate review, we conclude appellant has failed to demonstrate any reversible error. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Jose Subias (Husband) and Rachel Ringelspaugh (Wife) were married for approximately eight years before they separated in 2018. They have four children. The marriage was formally dissolved, leaving various issues to be tried including division of property, child custody and visitation, child and spousal support, and attorney's fees and sanctions. Trial using a remote technology platform—Microsoft Teams—began in October 2020, in the early stages of the COVID-19 pandemic.[1] It had to be continued to the following February because the presentation of evidence exceeded counsel's initial time estimates. The court rendered its decision in early March. Additional issues were heard and resolved at another hearing in July, and judgment was ultimately entered in August 2021.

---

[1] Pursuant to authority conferred by Governor Gavin Newsom in Executive Order N-38-20, Chief Justice Tani Cantil-Sakauye issued a statewide emergency order on March 30, 2020 suspending any rules preventing courts from using remote technology to conduct judicial proceedings. (Judicial Council of Cal., Statewide Emergency Order by Chief Justice Cantil-Sakauye (Mar. 30, 2020).) This statewide order remained in effect until it was rescinded effective April 30, 2022. (Judicial Council of Cal., Statewide Emergency Order by Chief Justice Cantil-Sakauye (Mar. 3, 2022).) Remote proceedings have nevertheless continued under a new state law permitting courts to conduct trials and evidentiary hearings using remote technology until July 1, 2023. (Code Civ. Proc., § 367.75, subd. (d)(1), enacted by Stats. 2021, ch. 214 (Sen. Bill No. 241) § 5, effective Jan. 1, 2022.)

Much of the parties' testimony at trial addressed the extent to which allegations of domestic violence should affect the court's resolution of issues such as spousal support and attorney's fees. Based on her greater income,[2] the court ultimately ordered Wife to pay Husband $1,429 in child support and $250 in spousal support on a monthly basis.[3] It also directed Wife to make a $10,000 contribution to Husband's attorney's fees, payable at $250 per month.

## DISCUSSION

At the outset we briefly summarize some basic principles that guide our review of the trial court decision in this case. We independently evaluate the correctness of the court's legal rulings (*Jacqueline B. v. Rawls Law Group, P.C.* (2021) 68 Cal.App.5th 243, 251), but to the extent Wife challenges the judge's factual findings, we accord substantial deference and will reverse only if no reasonable trier of fact could have reached the same conclusion (*ibid.*). The trial court's decision is presumed correct, and the appealing party bears the affirmative burden to demonstrate reversible error. (*In re Marriage of Deal* (2022) 80 Cal.App.5th 71, 80.) This includes the obligation to provide an adequate appellate record that satisfies the appellant's burden. (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.)

A. *"Documented Evidence" of Domestic Violence*

Family Code section 4320 sets forth the circumstances that the court "shall consider" in ordering spousal support. Citing subdivision (i) of the

---

[2] The court found that Wife had net monthly income after child support of $9,368, compared to Husband's $5,866.

[3] Jurisdiction to award spousal support would terminate on January 31, 2023.

section,[4] Wife faults the trial court for failing to "adequately consider" the documented history of Husband abusing her. In support of her argument, she points to (1) a police report of an alleged domestic violence incident in July 2018, (2) a restraining order request in August 2018, and (3) a letter Wife allegedly received from Husband.

The police report that Wife refers to appears to be a document that she attempted to lodge with this court as "Exhibit A." It includes the notation, "This exhibit was used in respondent's (Ms. Ringelspaugh) testimony on 10/6/21." But the judgment on reserved issues that is the subject of this appeal was entered on August 17, 2021, and Wife's notice of appeal was filed one week later on August 24. Assuming the notation is correct, a document introduced at a hearing that took place more than a month after the filing of the notice of appeal is irrelevant to the issues before us.

More importantly, perhaps, the record that *is* properly before us makes clear that the police report Wife relies on was *not* presented to the trial court in conjunction with the spousal support issues. Wife's attorney specifically discussed the police report with the trial court at the hearing on February 26. When the trial court mentioned the importance of "documented" evidence of domestic violence based on section 4320, subdivision (i), counsel mentioned "there were police reports that were taken at the time of the incident[,] [but] I don't think we brought them into evidence." It goes without saying that a trial judge cannot be faulted for failing to consider a document that was never offered into evidence.

---

[4] Subdivision (i) of Family Code section 4320 requires the court to consider "[a]ll documented evidence of any history or domestic violence." (Further undesignated statutory references are to that code.)

Wife next identifies as "Exhibit 101" a restraining order request she claims to have filed in August 2018 but later dropped in conjunction with Husband's agreement to move out of the family residence. Although the transcript of the hearing reflects that Exhibit 101 was identified and discussed with Wife during her testimony, there is no indication it was ever offered or received into evidence. In any event, Wife has failed to include the document as part of the record, making it impossible for us to accurately assess its relevance.[5]

Apart from these procedural concerns, the record reflects the court *did* consider the fact that Wife filed a restraining order request and obtained a temporary restraining order. It simply did not find this evidence particularly compelling. The judge referred counsel to the Court of Appeal decision in *In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481 (*Brewster & Clevenger*) in suggesting that "documented evidence" of domestic violence might require something more than a temporary restraining order granted on an ex parte basis and later dismissed.[6] Wife's counsel argued and the judge acknowledged that *Brewster & Clevenger* involved section 4325 rather than section 4320. But in the end, the judge was merely explaining why Wife's uncorroborated *allegations* in her restraining order request were not

---

[5] We attempted unsuccessfully to obtain the exhibits from the superior court so that we might augment the record on our own motion. But by agreement of the parties, it appears that Wife's exhibits were returned to counsel following the court's ruling.

[6] Interpreting section 4325, the court in *Brewster & Clevenger* held that " 'documented evidence' " of prior abuse sufficient to rebut the presumption against the award of spousal support to a person convicted of convicted of domestic violence means "written evidence . . . proving by a preponderance of the evidence his or her history as a victim of domestic violence in the relationship." (45 Cal.App.5th at p. 503.)

persuasive. Even if the court misapplied the holding of *Brewster & Clevenger* outside its express context, there was no flaw in its logic and no abuse of discretion in giving Exhibit 101 little weight.

Finally, Wife points to yet another exhibit that is not part of the appellate record. Exhibit 102 was apparently a letter written by Husband to Wife, which Wife interprets as his admission that he engaged in domestic violence.[7] In his oral ruling the judge specifically addressed the letter, finding that it was not "sufficiently detailed that I would treat that as documented evidence of abuse." Without a copy of the letter to review, we have no basis to conclude that the court's finding is not supported by substantial evidence.

B.  *Recorded Evidence of Text Conversations*

During the cross-examination of Wife, Husband's counsel asked her to review Exhibit 5, several photos of what appeared to be her Apple watch displaying a series of text messages between Wife and her boyfriend. Wife did not take the pictures and had no knowledge how they were taken. She nonetheless testified that she recognized some of the messages. On that basis, the court admitted the particular pages that Wife identified as text messages she sent and received. Citing to Penal Code section 632, Wife now contends that the photos of her Apple watch amounted to an illegally recorded conversation that should not have been considered.[8]

---

[7]  Unlike Exhibit 101, the record reflects that Exhibit 102 was admitted into evidence.

[8]  Subdivision (d) of Penal Code section 632 provides in relevant part that "evidence obtained as a result of . . . recording a confidential communication in violation of this section is not admissible in any judicial, administrative, legislative, or other proceeding."

We assume without deciding the applicability of Penal Code section 632 to this type of evidence. Even so, Wife's contention founders on her misreading of the record. Although at the October 23, 2020 hearing the court initially received into evidence the specific pages that Wife identified, when the continued hearing resumed in February 2021 the judge expressed concern about the admissibility of Exhibit 5. Reminded that certain pages of the exhibit had already been received, he said, "If I did admit it, then I [*sic*] excluding Exhibit 5. I should have caught it beforehand. . . . To my mind, that appears, then, to be a confidential communication in that that was recorded without permission of the two parties, and, therefore, it should be struck." The judge further clarified that Wife's *statements* about the text messages "can be admitted" but the "exhibit itself" could not.

Wife is simply incorrect when she asserts that Husband's counsel was "allowed . . . to admit the illegally obtained testimony into evidence." The court made clear that Exhibit 5 was excluded in its entirety. And even accepting that the messages might have been "illegally recorded," this did not affect the admissibility of Wife's independent and/or refreshed recollection of the text conversation. (See *Frio v. Superior Court* (1988) 203 Cal.App.3d 1480, 1498 [Penal Code section 632 "cannot operate to exclude the independent present recollection of a recording participant"].)

C. *Remote Trial Technology and Due Process*

Due to the exigencies of the COVID-19 pandemic and in an effort to provide a forum for the resolution of disputes, the superior court utilized remote video technology to conduct the trial. This technology sought to create a virtual courtroom, allowing the parties, witnesses, lawyers and court personnel to interact without being physically in the same location. As a final complaint, Wife recites a litany of "technological difficulties" during the

7

trial, suggesting that these imperfections denied her due process of law and a fair hearing. She identifies, in particular, problems with connections, camera angles, muffled voices, and the need to repeat testimony.

At its most basic level, procedural due process requires notice and the opportunity to be heard. (See, e.g., *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.) A fair hearing focuses on the latter requirement. It means that all parties should have an adequate opportunity to present and argue their case.

But a "fair" hearing does not mean a "perfect" one. (See, e.g., *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589.) Trials are human endeavors, and whenever human beings are involved perfection is rarely if ever attainable. We have reviewed the entire trial transcript. While we sympathize with the parties, counsel and the court for having to deal with technology that did not always perform optimally, we see nothing that made this trial unfair to either party. (See, e.g., *I.L. v. Ind. Dep't of Child Servs.* (Ind.Ct.App. 2021) 177 N.E.3d 864, 872−873 [minor errors in remote termination hearing during COVID-19 "did not rise to the level of a due-process violation"]; compare *K.D.H. v. Commonwealth* (Ky.Ct.App. 2021) 630 S.W.3d 729, 741 [due process violation occurred where family court was unable to hear or understand mother's testimony during remote termination hearing].)

Wife complains she was treated differently (i.e., unfairly) because Husband's attorney was permitted to e-mail rebuttal exhibits to the court and opposing counsel whereas her lawyer presented rebuttal exhibits using a "share screen" function in the remote hearing technology. She neglects to mention that it was *her lawyer* who suggested using the "share screen"

8

capability instead of e-mailing the exhibits. The court merely permitted Wife's counsel to proceed as she had suggested.

More importantly, Wife fails to identify what about the "share screen" mechanism was unfair. She merely asserts there were "differences in how the evidence was presented [that] resulted in varying effects on the listener." But a difference does not necessarily mean a *significant* difference. (See generally *Fireman's Fund Ins. Co. v. Aetna Casualty & Surety Co.* (1990) 223 Cal.App.3d 1621, 1626–1627.) The mere fact that different lawyers choose different methods of presenting evidence hardly demonstrates a violation of due process. Indeed, it is a fair inference that since Wife's attorney suggested the "share screen" approach, she saw no disadvantage to using it. There was no error, and certainly no violation of Wife's due process rights.

## DISPOSITION

The judgment is affirmed. Appellant shall bear her costs on appeal.

DATO, Acting P. J.

WE CONCUR:

DO, J.

BUCHANAN, J.

9